STICE *v.* STATE OF INDIANA

[No. 28,449.   Filed February 6, 1950.   Rehearing denied March 15, 1950.]

*J. Evelyn Pitschke,* of Indianapolis, for appellant.

*J. Emmett McManamon,* Attorney General; *Merl M. Wall* and *Charles F. O'Connor,* Deputy Attorneys General, for appellee.

JASPER, C. J.—Appellant was charged by indictment with murder in the second degree, under § 10-3404,

Burns' 1942 Replacement. He was tried by jury, convicted, and sentenced.

The only question presented under the assignment of error is the overruling of appellant's motion for a new trial.

Appellant first contends that the verdict of the jury is contrary to law and is not sustained by sufficient evidence.

The evidence discloses that appellant was a prize-fighter, having been known during his career as "One Round Muldoon"; that on the evening of May 8, 1947, appellant, the deceased, and one John Richard Bradley, had been drinking, and that the deceased, Olga Schwinn, was taken to the room of appellant by appellant and Bradley; that while in the room the deceased spilled some ashes from a heating stove on the floor, and appellant demanded that she clean them up; that she refused, and he hit her several times with his fist, and her nose started to bleed; that Bradley stayed about fifteen minutes and then left appellant's room at about 1:15 a.m., on Friday, May 9, 1947; that about 3:00 a.m. appellant came to the apartment of one James R. Vinson, on the same floor, in shorts and undershirt, and knocked on the door, saying that he wanted help and was in a lot of trouble; that he was told to put on some clothes and Vinson would then talk with him; that after putting on pants, appellant returned and again stated: "I want you to help me. I am in a lot of trouble"; that when asked: "What do you mean?" appellant said: "I have murdered a woman"; that Vinson went with appellant to appellant's room and looked in the door, and when he started to leave appellant tried to grab him, and asked him what he was going to do; that Vinson said he was going to call the police, and appellant said: "You

better not call the police"; that appellant had blood on his shorts, undershirt, on his face, and on his arm; that at the time Vinson went to appellant's room, Olga Schwinn was lying crossways on the bed, on her back, and when she would breathe blood would run out of her mouth and nose; that the death of Olga Schwinn was caused by a severe cerebral concussion resulting in hemorrhages; that she died at the Indianapolis City Hospital twelve hours after being brought there; that when brought into the hospital she had bruises about her face and neck; and that the injuries were caused by severe blows upon the head.

A police officer testified that he arrived at appellant's room at about 3:13 a.m., on May 9, 1947, and found Olga Schwinn lying on the floor, nude from the waist down; that she was badly bruised about the head and face and was unconscious; that an ambulance was called and she was sent to the Indianapolis City Hospital; that she was bleeding, and had blood on her head and face and other parts of her body; that appellant was in the room, had on trousers, that there was blood on his face, on his hair, and on his undershirt; that when asked how it happened, he said he had hit her. There was blood on the bed, on the pillows, as well as on the floor and on the wall. The hair of the deceased was matted with blood and there was blood on her clothing.

Another police officer testified that he saw Olga Schwinn at 4:00 a.m., on May 9, 1947, at the Indianapolis City Hospital; that he observed her in the receiving ward, unconscious and unable to talk; that she was bruised about the face, had two black eyes, and was bleeding at the nose and at the mouth; that in a conversation with appellant he said he had struck the woman with his fist; that his knuckles or the back of his hand was skinned.

There was other evidence that appellant had slapped the deceased, and that after he slapped her several times she fell against the stove.

Medical testimony further showed that the deceased was a white female, approximately 46 years of age, weighing about 125 pounds; that an external examination revealed bruises on the forehead, on the left chin, and the right lower neck, and ecchymosis about both eyes; that there was extensive hemorrhage under the outer covering of the brain on the left side; that the left half of the brain appeared to be contused; that the origin of the hemorrhage could not be accurately determined because of the marked destruction of the brain substance.

This court cannot weigh evidence, but must determine whether there is substantial evidence of probative value from which a jury could reasonably have inferred that appellant was guilty of the crime.

We therefore look to the direct and circumstantial evidence, and the inferences to be drawn therefrom, most favorable to the State. Here, if there is evidence of each essential fact in a chain of circumstances, we cannot weigh that evidence; and where the sufficiency of circumstantial evidence is in question, as in this case, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the verdict. *Petillo* v. *State* (1950), 228 Ind. 97, 89 N. E. 2d 623; *Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445; *Mandich* v. *State* (1946), 224 Ind. 209, 66 N. E. 2d 69; *Finch* v. *State* (1944), 222 Ind. 633, 56 N. E. 2d 851; *Thompson* v. *State* (1946), 224 Ind. 290, 66 N. E. 2d 597; *Dowty* v. *State* (1932), 203 Ind. 228, 179 N. E. 720; *Wrassman* v. *State* (1921), 191 Ind. 399,

132 N. E. 673; *Howard* v. *State* (1923), 193 Ind. 599, 141 N. E. 341.

We find that there is sufficient evidence to sustain the material elements of the charge.

Appellant contends that there was no showing that the death of the deceased was caused purposely and maliciously by appellant. These are questions of fact for the jury. *Ketring* v. *State* (1936), 209 Ind. 618, 621, 200 N. E. 212; *Landreth* v. *State* (1930), 201 Ind. 691, 696, 171 N. E. 192. Malice may be inferred from the use of a deadly weapon which caused the death charged in the indictment. Intent or purpose may be inferred from circumstances in evidence and the use of a deadly weapon. And the use of a deadly weapon is sufficient to support an inference of intent. *Landreth* v. *State, supra; Mosier* v. *State* (1942), 219 Ind. 669, 40 N. E. 2d 698; *Brattain* v. *State* (1945), 223 Ind. 489, 61 N. E. 2d 462. Therefore the sole question is whether the use of the fist by appellant was a deadly weapon. The general rule is that ordinarily a blow with the fist does not imply malice or an intent to kill. 40 C. J. S., Homicide, § 25, p. 876. However, from the evidence as above set out, the use of the fist by appellant on the deceased was such that the fist became a deadly weapon. *State* v. *Morgan* (1949), 55 O. L. A. 344, 89 N. E. 2d 323, 325; *State* v. *Hyland* (1898), 144 Mo. 302, 46 S. W. 195; Anno. 15 A. L. R. 676.

The contention that the motive was not established is not well founded. It was unnecessary to establish a motive for the killing where the criminal act causing death was otherwise fully established. *Brattain* v. *State, supra.*

Appellant further contends that there was error in giving instructions 9 and 24. Appellant failed to make

any specific written objection to either of the instructions, as required by Rule 1-7 of this court, and therefore presented no question for review. *Giberson* v. *State* (1946), 224 Ind. 504, 69 N. E. 2d 177; *White* v. *State* (1944), 222 Ind. 423, 54 N. E. 2d 106; *Brattain* v. *State, supra.*

Appellant further contends that the constitutional rights of the accused were violated under § 1 of the Fourteenth Amendment to the Federal Constitution, and §§ 12 and 13 of Art. 1 of the Constitution of Indiana, in that the accused was not properly and adequately represented. There was no showing that this attorney was not qualified as a lawyer, or that he failed to give proper time and consideration to the case. Contention is made that he failed to object to certain instructions, and that his actions were merely perfunctory, and that the only witness for the defense was the appellant. The court instructed the jury, and neither the State nor appellant submitted instructions. Adequate representation cannot be based upon the number of witnesses called or the mere fact that an objection should or should not have been made to certain instructions or to certain questions propounded. The cases of *Wilson* v. *State* (1943), 222 Ind. 63, 83, 51 N. E. 2d 848, 856, and *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915, are distinguishable from the facts in this case. However, in the *Wilson Case,* the court said:

"We do not hold that a defeated litigant in every or the usual case where his attorney has ignorantly or carelessly failed to save and present an error may nevertheless have it reviewed and made the basis of reversal of the judgment. Ordinarily procedural rules must be observed by litigants and may not be ignored by reviewing courts. To hold otherwise would invite appeals and violate

precedents that have given necessary order and stability to our appellate practice."

Adequate representation must be based upon the preparation for trial, the handling of the trial, and the necessary steps for appeal. Certainly, in looking at the entire record, and from the showing made by appellant's attorney at the time of appeal, we find that appellant was adequately represented, that substantial justice was done, and that his constitutional rights were not violated.

Appellant contends that the sustaining of objection to the cross-examination of witnesses was reversible error. To this we cannot agree, as it is not affirmatively shown that the substantial rights of appellant were prejudiced. This court has held that the extent to which cross-examination may be carried is within the sound discretion of the trial court, and that, unless there is an abuse of this discretion, it is not reversible error. *Henry* v. *State* (1925), 196 Ind. 14, 146 N. E. 822; *Stillson* v. *State* (1933), 204 Ind. 379, 184 N. E. 260.

Appellant further contends that error was committed in admitting appellee's Exhibits 1 to 11, inclusive, because it was not shown that they were a true representation of the person, place, or thing which they were purported to represent, and were of a prejudicial nature. The evidence reveals that the photographs were properly identified, and that when the photographs were taken the room of appellant was in the same condition as when appellant was placed under arrest; that the room had been padlocked from the time appellant was arrested by police until the police returned for the taking of photographs; that the photographs of the deceased were used for the purpose of identification and were properly admitted

in evidence, and could not prejudice the minds of the jurors. *Keyes* v. *State* (1890), 122 Ind. 527, 23 N. E. 1097; *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79.

After due consideration of all of the questions presented by appellant, we find no reversible error.

Judgment affirmed.

NOTE.—Reported in 89 N. E. 2d 915.