BLOOM *v.* STATE OF INDIANA.

[No. 1267S161. Filed September 29, 1970. No petition for rehearing filed.]

*Bruce E. Bloom, Bruce R. Snyder,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Deputy Attorney General, for appellee.

DeBruler, J.—This is an appeal from a conviction for robbery in violation of Acts 1941, ch. 148, § 6, Burns Ind. Stat. Ann. § 10-4101 in a trial by jury in the Allen County Circuit Court. Appellant was sentenced to 10 to 25 years in the reformatory.

Appellant's contention on appeal is that there was insufficient evidence to sustain the verdict. In reviewing the allegation of insufficient evidence this court will not weigh the evidence nor resolve questions of credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the verdict of the jury. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558. The facts which tend to support the verdict are as follows:

Mike Evans, the victim, testified that on June 18, 1966, he was drinking with a friend Bill Trigg in a bar in Fort Wayne, Indiana. These two were joined by an acquaintance of Trigg's named Ron McDaniels. At around 1:00 a.m. on the 19th of June, the three left the tavern and met appellant, and acquaintance of McDaniels. The four men got in Evans' car in order to drop Trigg off and go do some more drinking. On the way to drop Trigg off either appellant or McDaniels said he'd need at least $100 for drinking. Evans said he had plenty of money and proceeded to take out his wallet and count his money, around $60 in front of the other men. After Trigg got out the other two got in the front seat with Evans, appellant in the middle and McDaniels on the outside. They began driving around, following appellant's directions, presumably to a place to do more drinking. Evans testified that

the two of them began whispering back and forth to each other and he became frightened figuring "something was up." Evans missed appellant's directions to turn off and appellant grabbed Evans around the neck and began beating him in the face saying "I told you to turn." Evans slammed on the brakes stopping the car and McDaniels got out. Appellant had Evans down on the seat and was holding him down, beating him. A car pulled up in the back and Evans laid on the horn to bring help and then he was knocked unconscious.

Bill Trigg testified that he was going home because he didn't drink much and couldn't take anymore. He estimated that between 7:00 p.m. and 1:00 a.m. when they left the tavern he had five beers and Evans had around nine beers. Trigg said Evans had had a lot of beer but he knew what he was doing. Trigg also said he trusted Evans to drive him home and that he drove as straight and calm as a sober person.

Officer Schall of the Fort Wayne police department testified that at 3:00 a.m. on June 19, 1966, he found a 1955 Chevrolet stopped headed north in the northbound lane of Lindenwood Road about 300 feet north of the Norfolk and Western railroad tracks. Evans was lying unconscious face down in the south bound lane and was bleeding profusely from the head and face. There was also blood on the car seat. Evans had no wallet at that time.

Sgt. Gallimeier of the Fort Wayne police department testified that in the vicinity where this incident occurred there was no turnoff between the tracks and where the car was found. The first place to turn off of Lindenwood Road north of the tracks was about two blocks from the tracks. On the one side was an open field and on the other St. Francis College and some big open areas. There was a place to turn off of Lindenwood just south of the tracks but it was not a road or alley, just a drive into private property.

Appellant did not take the witness stand but his oral and

written statements to the police were admitted into evidence. Gallimeier testified that he interviewed appellant concerning this incident and appellant said he did not have anything to do with it. Gallimeier pointed out that appellant had blood on his shirt and his missing shirt button had been found at the scene. Appellant then admitted he had beaten Evans saying he did so because Evans was driving wildly and appellant wanted to make him stop it.

Robert Groves, then a detective Sgt. on the Fort Wayne police department testified that he was assigned to investigate the case and that appellant asked to talk to him. Appellant's statement, State's Ex. 1, was reduced to writing and signed by appellant. In pertinent part the statement read:

"A. Evans was driving the car and I suggested to go out to Westfield area to look around. When we got out by there, I decided to go home, so I told him to cut down Lindenwood Road to take me home. All three of us were sitting up front with me in the middle.

Q. How did it happen that you stopped on the Lindenwood Road?

A. Before we got to the Norfolk and Western Railroad Tracks, Evans was driving 50 to 55 M.P.H. and when he crossed the tracks it felt like we were airborn and I hit the brakes and grabbed the steering wheel. After the car skidded to a stop, I hit him in the face with my right hand. I grabbed him around the head with my left arm and pulled him down. At this time a car was pulling up behind us and the other guy that was with us got out and went back and told the man everything was alright. This other car took off around us. At this time Evans started kicking and got his foot on the horn and blew the horn 5 or 6 times. Evans then bit me on the right thumb.

Q. What was the fellow that was with you doing at this time?

A. He came up to the driver's side of the car and opened the door and hit Evans a couple of times and pulled him out. At that time I got out on the riders side and walked around to the other side of the car and saw this other fellow I was with kicking Evans. At this time this fellow said 'get his money.' And I said, 'No, not me.'

About this time another car was coming up from behind, going north.

Q. What did you do at this time?

A. We both started running and jumped the fence and east through a field to the railroad tracks.

Q. When did you know that this fellow had gotten the money from Evans?

A. After we stopped running and started walking down the railroad track, he said, 'I got the money.'

Q. Did he show you the money or tell you how much he got?

A. No.

Q. Did you know how much Evans had on his person?

A. Yes, he showed us approximately $62.00 when we were in his car going out to Westfield."

Groves then asked appellant if he would tell that story to McDaniels' face and appellant promised he would do so when McDaniels was found. However appellant refused to do so when given the opportunity.

Appellant argues that the evidence shows that he was guilty of assault and battery but is insufficient to sustain a verdict of guilty of robbery. We believe the above evidence permits the following reasonable inferences therefrom:

1) Appellant knew Evans had $60 in his wallet.

2) Appellant and McDaniels whispered back and forth while riding in the front seat right alongside Evans. They were obviously discussing something they wanted to keep from Evans and this frightened Evans.

3) Appellant directed Evans to a sparsely populated area in the city and told him to turn in a private drive of some sort, but not a street.

4) When Evans missed the turn, or out of fear, refused to turn thus, foiling the plan to rob him, appellant decided to carry out this plan anyway and he attacked Evans.

5) Appellant and McDaniels beat Evans and took his wallet and fled together.

Appellant's statement, although intended to exculpate him, is incredible and is contradicted by other testimony and the jury need not have believed it. We believe this is shown by the following considerations:

1) Appellant first lied by telling the police he was not involved in the incident in any way and it was only when confronted with evidence that he was there that appellant admitted beating Evans.

2) Appellant told the police that he directed Evans down Lindenwood Road in order to go home. However appellant lived on Cass Street not Lindenwood Road and the only place where appellant could have wanted Evans to turn was a private drive in an obviously sparsely populated area.

3) Appellant said Evans was driving wildly but Trigg testified that shortly before that Evans was driving as calm as a sober person.

4) Even if Evans was driving wildly it is incredible that appellant would have attempted to halt this by beating the driver in the face while he was driving in such a manner.

5) Appellant stated that his purpose in beating Evans was to stop Evans' wild driving. However, Evans testified that appellant started beating him because he missed a turn.

6) Appellant stated his purpose was to stop Evans' wild driving but he continued to beat Evans after the car was stopped and he held Evans down while McDaniels ran back to assure a passing motorist that everything was alright.

7) After appellant had already waived his right to remain silent and gave oral and written statements to the police, he refused to confront McDaniels with his story.

The jury could disbelieve appellant's story that he did not actually take the wallet or get any of the money. Even if it were assumed to be true, the fact that appellant did not personally take Evans' wallet nor receive any of the money up to the time appellant and McDaniels split up does not mean appellant cannot be convicted of robbery.

In *Prather* v. *State* (1969), 252 Ind. 141, 246 N. E. 2d 479, we stated that a defendant may be convicted as a principal upon evidence that the defendant aided or abetted in the perpetration of the crime. Therefore the state need not have proved that appellant did the actual physical taking of the wallet or received any money.

Judgment affirmed.

Hunter, C.J., Arterburn, Givan, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 262 N. E. 2d 392.