OLA LEE SANDERS *v.* STATE OF INDIANA.

[No. 870S195.  Filed February 23, 1972.]

*William C. Whitman,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellee.

DeBruler, J.—The appellant was charged with aggravated assault and battery and tried before the Honorable F. Kenneth Dempsey, Judge, and a jury, in the St. Joseph Superior Court. She was found guilty of the offense, and sentenced to not less than one nor more than five years in the Indiana State Women's Prison.

The appellant's main contention is that the evidence introduced against her was insufficient to sustain her conviction as a matter of law. The trier of fact, in this case a jury, found the appellant guilty as charged, and on them is reposed the primary duty to conscientiously weigh the evidence and to resolve all questions of credibility. The jury having decided, this Court will look only to that evidence and the reasonable inferences therefrom which could support the finding of the jury. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 255 Ind. 687, 260 N. E. 2d 558.

The jury as the final arbiter of fact was put to the ultimate test in this case by the bizarre conflicting evidence that it heard. The strange scenario of this case unfolded in the following manner. A man was shot in the left ear early in the morning of July 6, 1969. He apparently identified his assailant as one Melvin Lee Kelly and Mr. Kelly was charged with the crime. At the ensuing trial, on November 10, 1969, Ola Lee Sanders, the appellant here, testified that she had

been the one who had fired the shots at the victim. She further testified that she was living with the defendant, Mr. Kelly, at the time of the incident and at the time of trial.

On November 13, 1969, three days after the appellant had testified that she was the assailant, she was charged with the same crime. The relevant portion of the charging affidavit reads as follows:

"that on or about the 6th day of July, 1969, at and in the County of St. Joseph, State of Indiana, one Ola Lee Sanders did intentionally inflict great bodily harm upon another person, to-wit: Leslie Buchanan, and that she did, at Chapin and Napier Streets, South Bend, County and State aforesaid, shoot at the person and body of said Leslie Buchanan with a certain pistol which she then and there held in her hand, causing said Leslie Buchanan to be injured in the right ear, contrary to the form of statute in such cases made and provided and against the peace and dignity of the State of Indiana."

At the appellant's trial, the victim, Mr. Leslie Buchanan, testified with unshakeable certainty that he had been shot by Melvin Lee Kelly on the morning of July 6, 1969. His testimony was that he had gone to collect a debt from Kelly and an argument had ensued. He left the scene in his automobile, but returned a few moments later and shouted to Kelly from his car that he had better pay his debt by the following day. At this time, according to his testimony, Kelly pulled out a pistol and fired five shots at him while he was sitting in the car. He managed to get out of the car and run down the street where he flagged down a passing police officer. He got in the police car and drove around the area looking for Kelly without success, and then was taken to the hospital. He testified that he did not see the appellant, Ola Lee Sanders, in the vicinity at any time during this incident. He was absolutely certain in his identification of his assailant.

The police officer in question testified that he was patrolling in the area, and heard five shots fired. He began to back his patrol car up to the corner where the shots had been fired

when he met Mr. Buchanan who ran up to the car bleeding from his left ear. According to the officer, at that point, "we put him in the car, took back to the corner. He pointed out where Melvin Kelly shot him. He was not there, however. We could not find anybody that he would identify. We took him to the hospital, took a report." A second officer called to the scene testified that the victim's car was parked on the wrong side of the street near the corner of Napier and Chapin. He testified that there were four bullet holes in the car, two through the rear side window on the driver's side, one through the driver's side door, and one through the driver's side rear fender. He testified that there was blood all over the back part of the seat, and that it was fresh. He testified that he observed the wound and that "it was like a tear in the ear and just behind the ear on the hairline was like a cut."

Following this testimony, the testimony of the appellant which had been given at the previous trial of Melvin Lee Kelly was read to the jury without objection. At this previous trial, the appellant admitted firing five shots at the victim on the night in question. She testifed that the victim and Melvin Lee Kelly had been arguing previously, and that the victim had driven off in his automobile. He returned a few minutes later, at which time Melvin Lee Kelly had left the scene. According to the appellant's testimony, the victim jumped out of his car and pulled out something like an automobile jack and came toward her with it. When he did that, she pulled out a gun from her purse and shot him about five times. She did not know whether or not she hit the victim. She testified that in the previous argument the victim had said that he would get Melvin Lee Kelly and if he coud not get Mr. Kelly he would get his woman. No other evidence of probative value was introduced at this trial, and no defense was entered.

This case thus presents the unusual circumstance in which the State's own witness must be disbelieved if this conviction is to stand. The jury in this case resolved this factual dilemma

against the appellant and chose not to believe the victim's positive identification of another man as his assailant.

The testimony of the police officers clearly establishes that a man was shot in the ear in the course of a felonious assault. The question for this jury was, who did it? The appellant testified under oath that she did it. The victim testified under oath that another person fired the shot. The jury chose to disbelieve his version. The testimony in this case includes direct evidence supporting every element of the crime charged, so that the sufficiency of the evidence can only be raised by way of questioning the credibility of the witnesses. No one suggests that there was not a felonious shooting, and the main issue in the case concerns the identification of the assailant. The jury has decided this issue against the appellant as is their right and duty, for "this Court does not determine credibility of witnesses, dictate what evidence should or should not be believed by a jury, or weigh conflicting evidence." *Willoughby* v. *State* (1966), 247 Ind. 210, 214 N. E. 2d 169. While admitting the unusual nature of this case, and without implying what our decision as jurors might have been, we can find no precedent in logic or in law to hold that a victim's identification of his assailant must be believed.

The appellant also argues that in her testimony admitting the shooting she raised a self-defense claim which the jury had to believe since it was introduced by the State and unrebutted. However, once again appellant's point is defeated by the respect given by this Court to the decision of the jury. The jury has the power to believe all or part of a witness' testimony and is not compelled to accept that part of the appellant's testimony which tends to demonstrate mitigating circumstances. *Swift* v. *State* (1961), 242 Ind. 87, 176 N. E. 2d 117.

Judgment affirmed.

Arterburn, C. J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 279 N. E. 2d 194.