HAROLD LEON SARTEN AND BILLY EUGENE SARTEN *v.*
STATE OF INDIANA.

[No. 1-373A53. Filed November 15, 1973. Rehearing denied December 18, 1973. Transfer denied April 30, 1974.]

*Lawrence D. Renfro, Renfro and Whitton,* of New Castle, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

ROBERTSON, P.J.—The defendant-appellant Harold Sarten was convicted by a jury of auto banditry and second degree burglary. His brother, defendant-appellant Billy Sarten was convicted of auto banditry and safe burglary at the same trial. The viable issues raised in their overruled motion to correct errors are directed to the alleged error of the trial court in failing to direct a finding in favor of the Sartens upon the evidence and that there was insufficient evidence to sustain the verdict. In their brief the Sartens jointly argue the issues. We shall treat them in the same manner.

The Sartens, along with Charles Heck and Danny Purvis, were charged by affidavit. Purvis pleaded guilty to auto banditry and subsequently testified at the Sartens' trial. The Sartens neither testified or presented evidence at their trial.

Prior to a review of the evidence it should be noted that this court will not weigh the evidence nor resolve the questions of credibility, but will look to the evidence most favorable to the state and the reasonable inferences therefrom which support the verdict of the jury. *Washington* v. *State* (1971), 257 Ind. 40, 271 N.E.2d 888; *Davis* v. *State* (1971), 257 Ind. 46, 271 N.E.2d 893. A conviction will be affirmed if there is evidence of probative value from which the trier of fact could reasonably infer that the appellants were guilty beyond a reasonable doubt. *Gann* v. *State* (1971), 256 Ind. 429, 269 N.E.2d 381; *Asher* v. *State* (1969), 253 Ind. 25, 244 N.E.2d 89.

Purvis testified that after drinking beer and riding around one evening with the other three defendants, their discussion turned to robbery. The Brammer-Jacobs Furniture Store in New Castle was decided upon. The four went to pick up a sledge hammer, a pry bar, and chisel from Purvis' father. Purvis' father testified that the five of them went in a car to a place where the tools were located. He also identified the sledge hammer because of the numbers "2037" etched upon it. The father was then returned home. Purvis testified that they then went to his brother's house to exchange Harold Sarten's car for his brother's 1964 black over grey Pontiac convertible. The reason given for exchanging cars was that Harold Sarten was of the opiinon that everyone knew his car. They subsequently arrived in the immediate vicinity of Brammer-Jacobs. Purvis got out of the car and walked to the rear door of the store. He began prying that door open with a screwdriver. Fearing he had been seen, Purvis walked up an alley and was picked up by the other three in the parking lot near Brammer-Jacobs. Billy Sarten and Heck got out of

the car, taking the sledge hammer, and walked across the parking lot towards the rear of Brammer-Jacobs. Purvis and Harold Sarten, who was driving the Pontiac, then drove to a service station for gas.

Another witness, James Burger, was staying in a third floor room at the New Castle Y.M.C.A. The room overlooked the parking lot and the rear of Brammer-Jacobs. At about 1:00 A.M. he arose to close the window, and saw a person walking across the parking lot and into the alley behind the store. After lying down he heard a prying noise coming from outside. Upon arising he saw a person at the rear of Brammer-Jacobs. A car came by and the person at the door of Brammer-Jacobs stepped back into the alley. Burger laid down again. He heard a car with loud mufflers circle the block three or four times. Again hearing noises, Burger looked to see two men using a pry bar on the rear door of the furniture store. He also testified that the two men had crossed a parking lot to the rear of the store after emerging from a dark over light car with loud mufflers. He thought it to be a Pontiac convertible. Burger called the police who arrived at the rear of the store within several minutes.

Police officers testified that Harold Sarten and Purvis, in the Pontiac convertible with loud mufflers, were arrested about five blocks from the furniture store approximately fifteen minutes after the radio dispatch about the burglary. Shortly prior to that dispatch they had been seen by a policeman driving slowly past Brammer-Jacobs. Billy Sarten and Heck were picked up while standing in front of, or walking past, Brammer-Jacobs about one and one-half hours after the burglary was reported. Billy Sartens square-toed shoes and Heck's construction boots matched tracks found in the snow on the parking lot. Other evidence included testimony regarding the pried open rear door at Brammer-Jacobs, the battered condition of the doors on the store safe, and the sledge hammer and other tools lying in front of the safe.

Both Sartens were convicted of the auto banditry statute, IC 1971, 35-12-2-1, Ind. Ann. Stat. § 10-4710 (Burns 1972), which contains three essential elements under the facts of the instant case which must be proven beyond a reasonable doubt. They are (1) the commission of or an attempt to commit a felony, (2) with an automobile nearby, and (3) the use of an automobile in escaping or intending or attempting to escape.

In the case of Harold Sarten, the additional felony of second degree burglary must be proven beyond a reasonable doubt. The essential elements, as found at IC 1971, 35-13-4-4(b), Ind. Ann. Stat. § 10-701(b) (Burns 1956), are (1) a breaking and entry, (2) of a building or structure other than a dwelling house or place of human habitation, and (3) with the intent to commit a felony therein.

In the case of Billy Sarten the felony of safe burglary, as defined by IC 1971, 35-1-61-1, Ind. Ann. Stat. § 10-702a (Burns 1956), must be proven beyond a reasonable doubt. The essential elements of safe burglary are (1) a breaking and entering of a building, (2) with an intent to commit a felony, and (3) the taking of or an attempt to enter a safe.

We are of the opinion the verdict was supported by the necessary quality and quantity of evidence.

The keystone of the Sartens' argument is that "there is no evidence from which a jury could conclude that the defendants did, in fact, participate in the alleged crime." It is true that after a certain point the evidence of Billy Sarten's activities becomes circumstantial in nature.

"Where the sufficiency of circumstantial evidence is in question, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court. Stice v. State (1950), 228 Ind. 144, 89

N.E.2d 915; Petillo v. State (1950), 228 Ind. 97, 89 N.E.2d 623." *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554, at 556.

The interlocking of the testimony of Purvis and Burger placing Billy Sarten and Heck at the rear door of Brammer-Jacobs in conjunction with the finding of the sledge hammer shortly thereafter in front of the battered safe is circumstantial evidence from which an inference may be reasonably drawn tending to support the jury's verdict.

Additionally, the proof of Harold Sarten's actively assisting and supporting the criminal conduct of Billy Sarten and Heck, as testified to by Purvis, was sufficient to sustain his conviction. IC 1971, 35-1-29-1, Ind. Ann. Stat. § 9-102 (Burns 1956) allows one who aids and abets in the commission of a felony to be charged as a principal.

The judgment of the trial court is affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 303 N.E.2d 300.