## LEE *v.* STATE OF INDIANA.

[No. 29,018.  Filed March 19, 1954.]

*Glenn W. Funk,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Deputy Attorney General, for appellee.

BOBBITT, J.—Appellant was charged by affidavit in two counts, Count 1 charging the crime of vehicle taking and Count 2 as being an habitual criminal; tried by jury, and found guilty on Count 1.

Motion for new trial was timely filed and overruled. This ruling is the sole error here assigned.

The sufficiency of the evidence is challenged by the motion for a new trial.

In order to sustain the conviction herein, it was necessary for the state to prove, by substantial evidence of probative value, with proper inferences drawn therefrom, (1) that the vehicle described in the affidavit was driven away and operated by someone without the consent of the owner; and (2) that appellant took possession and assumed control and use of the vehicle and drove it away and operated it without first obtaining the consent of the owner so to do.

The evidence most favorable to the state is as follows:

A 1949 Ford Sedan bearing 1951 Indiana license number QD 2855 belonging to William Butcher was driven away from 728 North East Street, in the city of Indianapolis, Marion County, Indiana, between 9:30

P.M. on February 17 and the evening of February 19, 1952, and was recovered from a body shop in Kokomo, Indiana, on February 20, 1952.

The evidence shows that on Sunday afternoon, February 17, 1952, at about 6:30 P.M. in company with Clarence Tucker, appellant left his girl friend's apartment at 532½ Massachusetts Avenue, in Indianapolis, which was about two and one-half blocks from the 700 block of North East Street, to go to the grocery store. They were gone about one-half or three-quarters of an hour when they returned and dinner was prepared and served. About ten o'clock Tucker left, but returned in about twenty minutes and called appellant into the kitchen and asked him if he would drive his (Tucker's) car back to Michigan City, and handed him the keys. They all left the apartment about 10:30, the girls accompanying the two men to a parking lot where appellant got into Tucker's car and Tucker "went on towards North Street" saying that he was going to meet a friend.

Appellant and William Lee Tucker were arrested in Kokomo early in the morning of February 18, 1952. The Kokomo police first saw appellant driving alone, west on Road 35 coming into Kokomo on the morning of the 18th. They saw two cars with the lights on sitting side by side at a drive-in filling station. These cars "pulled out" and crossed in front of the police. One car was a 1949 Ford Sedan, the other a 1941 Ford Coupe. Each car was occupied by one man only. Police followed the cars for about twenty blocks when the Ford Coupe sideswiped an automobile. They then drove on about two miles being followed by the police when the Ford Coupe stopped and appellant got out of the car and looked at the fender. One of the officers then arrested him for leaving the scene of an accident.

The squad car containing two policemen proceeded

about twenty feet to the Ford Sedan which had stopped for a traffic light. It turned the corner before the light turned green and the squad car followed it.

Officer Berryman stayed with the appellant who told the officer that the Ford Coupe which he was driving belonged to a friend and he was taking it to Michigan City for him. The driver of the Ford Sedan was also arrested and brought into the Kokomo police station.

One of the Kokomo police officers testified that in a conversation the day following appellant's arrest, at which appellant and the driver of the Ford Sedan, Tucker, were present with certain police officers, appellant said that he and Tucker were in Indianapolis at their girl friend's and Tucker asked him to drive the car to Michigan City for him.

At the time Tucker was arrested by the Kokomo police he was driving a 1949 Ford Sedan, license number QD 2855. The car, appellant was driving, was registered in the name of Clarence Lee.

An Indianapolis detective testified that while talking with appellant in the Kokomo jail appellant said that he had met Tucker at Michigan City "while doing time in the prison." Previously when asked by a Kokomo policeman if he knew Tucker, appellant's answer was "No."

It is further shown that the Indianapolis police who went to Kokomo to return appellant and Tucker to Indianapolis searched the Ford Coupe which appellant was driving approximately one and one-half days after his arrest, and found some burglary tools in the backend of the car. These same police then examined the 1949 Ford Sedan driven by Tucker and found a "jumper" under the hood which was used to start the motor without a key. This was introduced in evidence

as state's Exhibit No. 1. The name of William Butcher of Winslow, Indiana, was found in the glove compartment of the car which Tucker was driving.

Concerning a conversation had on the way to Indianapolis from Kokomo, Detective-Sergeant Oren Mangus of the Indianapolis police force testified as follows:

"Q. Did you have any conversation on the way down to Indianapolis?

"A. We did. We had quite a conversation on the way back.

"Q. Would you tell the jury the substance and who said what?

"A. We were talking about Michigan City and they were telling us about the system they had up there.

"Q. Was there anything said with reference to this case?

"A. Lee, he said he had nothing to do with the stolen car. He said that Tucker had asked him to drive his own car up there and he turned to Tucker and said 'isn't that right' and Tucker said 'yes' but later on Tucker changed his story.

"Q. Did he tell you a different story in the presence of Lee?

"A. I don't recall whether it was in the presence of Lee or not. I won't say as to that."

On cross-examination Sergeant Mangus further testified:

"Q. Officer, of your own knowledge, you don't know whether Lee had a thing to do with it, do you?

"A. Through my investigation, yes.

"Q. Of your own knowledge, you don't know if he had anything to do with it, do you?

"A. Yes.

"Q. Of your own knowledge, you don't know if

he had anything to do with the theft of this car, do you?

"A. My answer is the same.

"Q. You understand English, don't you? Of your own knowledge?

"A. My own knowledge tells me he was there and he had knowledge of it, at the time, on the way up to Kokomo.

"Q. You mean you're psychic?

"A. I go by investigation and the evidence.

"Q. Of your own knowledge, you don't know whether or not Tucker had any agreement with Lee to take this 1949 car, do you? Answer my question.

"A. I think I did."

Aside from the testimony of officer Mangus there is no evidence from which the jury could have found that appellant was in any way connected with the taking or use of the stolen car. Hence, if appellant's conviction is to be sustained it must be upon the testimony of officer Mangus.

The testimony of officer Mangus is a conclusion based upon information which he obtained in the course of his investigation of the case, after appellant's arrest. No facts upon which any inference of appellant's guilt could be based, are to be found in this testimony. It is nothing more than a mere opinion of the witness as to the guilt of appellant.

The unsupported opinion of officer Mangus, that appellant had something to do with the crime charged, is not sufficient to establish the acts charged in the affidavit; nor can such testimony be considered to supply a lack of evidence of such acts and conduct as are necessary to constitute the crime charged. See: *Caveney* v. *State* (1936), 210 Ind. 455, 459, 4 N. E. 2d 137; *Hiner* v. *State* (1925), 196 Ind. 594, 599, 149 N. E. 168; cf: *Green* v. *State* (1945), 223 Ind. 614, 621, 63 N, E. 2d 292,

The record here discloses no evidence, either direct or circumstantial, or any from which proper inferences might be drawn, that appellant took possession, assumed control, used, drove, run or operated the vehicle described in the affidavit.

The most that can be said of the evidence in this record is that it tends to establish a suspicion of guilt. This is not sufficient to sustain a conviction. *Robertson* v. *State* (1952), 231 Ind. 368, 377, 108 N. E. 2d 711.

The state has wholly failed to sustain its burden of proof, and the evidence being insufficient to sustain the verdict of the jury, appellant's conviction is contrary to law.

It is not necessary to consider the other questions raised, as they are not likely to recur in a new trial.

For the reasons above stated, the judgment of the trial court is reversed with instructions to grant appellant a new trial.

Judgment reversed.

Draper, C. J., Emmert, Flanagan and Gilkison, J.J., Concur.

NOTE—Reported in 118 N. E. 2d 115.