ASOCAR *v.* STATE OF INDIANA.

[No. 967 S 76. Filed May 22, 1969. Rehearing denied July 15, 1969.]

*Frank E. Spencer,* Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Michael V. Gooch,* Deputy Attorney General, for appellee.

GIVAN, J.—This an appeal from the judgment of the Marion Criminal Court, Division One, in which the appellant was found guilty of attempted commission of robbery while armed. Judgment was rendered following a jury verdict of guilty.

The evidence in the case is that on the 23rd day of July, 1966, at about 2:00 A.M. the prosecuting witness, Clinton Ford, had driven his automobile into a service station located at 15th and Northwestern in the city of Indianapolis. He got out of his car and walked over to an automobile driven by his brother where his brother was conversing with the defendant, who the witness believed was a service station attendant.

As Clinton Ford approached the defendant, the defendant stuck a gun in his side and said, "This is a stick up." The defendant then forced Clinton Ford and his brother to walk toward the service station. As they arrived at the door they hesitated before going inside, and the defendant tried to force them in saying that he didn't want to shoot them.

Ford's brother started walking towards the appellant, who started backing up, at which time the brothers knocked the gun from appellant's hand. The appellant then attempted to escape. Ford chased him, captured him and held him until the police arrived.

Ford testified that he did not know the gun was a tear gas gun until after it had been recovered. He testified that it looked like a small .22 automatic.

At the close of the state's evidence the appellant filed a motion for discharge for failure to prove the appellant's age,

following which the Court on motion of the State permitted the State over appellant's objection to reopen its case for the sole purpose of establishing appellant's age.

Upon reopening, the following testimony was heard:

"Q. Sergeant White, as the detective who investigated this incident, can you tell me whether or not Raul Alamia Asocar is over the age of sixteen (16) years?

"A. Yes sir. Our records show that I checked him to be thirty-nine (39)."

It is within the discretionary powers of the Trial Court to permit the State to reopen its case. Acts of 1905, ch. 169, § 260, as amended and as found in Burns' Ind. Stat. Ann. § 9-1805, provides in part as follows:

"Third. The parties may then respectively offer rebutting evidence only, *unless the court for good reason, in furtherance of justice, permit them to offer evidence upon their original case*" (emphasis added).

Under the provisions of the statute the Court was clearly within its discretionary power in permitting the State to re-open its case for the purpose of establishing the defendant's age. This Court has previously held that it will not interfere with the discretion of the Trial Court in admitting original testimony even after the evidence has been closed, unless it clearly appears that there was an abuse of discretion. *Kahlenbeck v. State* (1888), 119 Ind. 118, 123, 21 N. E. 460. It will be noted from the above quoted testimony from Sgt. White that he was asked if he could tell whether or not the appellant was over the age of 16 years, to which he answered, "Yes sir." He further explained that the records showed him to be 39 years of age.

This Court has held that evidence of age can be established by a witness giving his observation of the appellant as to his age. *Watson v. State* (1956), 236 Ind. 329, 334, 140 N. E. 2d 109.

In addition, the record in this cause shows the verdict of the jury to be, in part, "and we find the defendant's age is 39 years."

It is, therefore, apparent from this record that there is a specific finding in the verdict as to the age of the appellant and that this finding is substantiated by competent evidence, which was admitted within the sound discretion of the Trial Court.

There are two other questions remaining in this case which must be disposed of. The appellant claims there is no evidence showing that he was armed with a weapon as defined in the statute under which he was charged. The evidence was that he was armed with a tear gas pistol which was constructed in such a manner that no projectile was fired from the gun, but the firing of the gun caused an emission of tear gas only. The statute reads as follows:

"Any person who being over sixteen [16] years of age, commits or attempts to commit either the crime of rape, robbery, bank robbery, or theft while armed with a pistol, revolver, rifle, shotgun, machine gun or any other firearm or any dangerous or deadly weapon, or while any other person present and aiding or assisting in committing or attempting to commit either of said crimes is armed with any of said weapons, shall be guilty of a separate felony in addition to the crimes above named and upon conviction shall be imprisoned for a determinate period of not less than ten [10] years nor more than twenty [20] years, to be fixed by the court: Provided, That such court shall have the right to provide in the judgment that such term of imprisonment shall not run concurrently with any imprisonment that may be adjudged for either of the crimes first above enumerated but that such term of imprisonment shall be served beginning at the expiration of the imprisonment adjudged for either of said first named crimes. [Acts 1929, ch. 55, § 1, p. 139; 1965, ch. 298, § 1, p. 819.] § 10-4709 Burns' Ind. Stat. Ann. (1968 Cum. Supp.)

This Court has recently held that use of the term "firearm" as it appears in the above statute covers the entire

spectrum of possible weapons which use gun powder. There is, therefore, competent proof under the weight of authority in this state and throughout the United States that the use of the weapon described in this case was evidence from which the trier of fact could conclude that the appellant used a firearm. *Kidwell v. State* (1967), 249 Ind. 430, 11 Ind. Dec. 641, 644, 230 N. E. 2d 590.

He further claims that the evidence is that the gun was not loaded at the time of the alleged offense. In the instant case there is no question but what the pistol, even though it was a tear gas pistol, was of a type which when loaded was fired by gun powder, the force of which emitted tear gas. When a firearm is used in the commission of a crime, the fact that it may not have been loaded does not reduce the offense. See 79 A. L. R. 2d 1426, note 6 and cases cited; also, 74 A. L. R. 1209 and cases cited.

Finally, the appellant raises the question that there is no such crime as attempted robbery while armed, and that there is no evidence that the appellant did at any time attempt to take anything whatsoever from the person of Clinton Ford as charged in the affidavit. As to the question concerning the crime of attempted robbery while armed, we can only refer to the express language of the statute as above quoted.

The alleged victim of the attempted robbery, Clinton Ford, testified, in part, as follows:

"When I got where he was, he put a gun in my side and said, 'This is a stick up.'"

This testimony, together with all of the other testimony describing the acts of the appellant in this case, clearly demonstrate evidence from which the trier of fact could have concluded beyond a reasonable doubt that the appellant did, in fact, attempt to perpetrate a robbery against the person of Clinton Ford.

The decision of the lower Court is affirmed.

Arterburn and Hunter, JJ., concur; DeBruler, C. J., concurs in result; Jackson, J., dissents with opinion.

### DISSENTING OPINION.

JACKSON, J.—I am unable to agree with the decision reached in the majority opinion and dissent thereto.

Appellant was charged by affidavit filed in the Criminal Court, Division One, of Marion County, Indiana, with "Attempt to Commit Robbery While Armed." Appellant entered a plea of not guilty to the affidavit and the cause was tried by jury resulting in a verdict of "guilty of the commission of Attempted Robbery while Armed, as charged in the affidavit . . .;" thereafter, judgment was rendered on the verdict and appellant was sentenced to the Indiana State Prison for a term of ten (10) years and costs.

The affidavit herein reads as follows:

"BE IT REMEMBERED, That, on this day before me, NOBLE R. PEARCY Prosecuting Attorney of the Nineteenth Judicial Circuit, personally came CLARENCE A. WHITE who, being duly sworn, upon his oath says that RAUL ALAMIA ASOCAR on or about the 23rd day of JULY, A.D. 1966, at and in the County of Marion in the State of Indiana, being then and there over the age of sixteen (16) years, did then and there unlawfully, feloniously, forcibly by violence and *by putting CLINTON FORD, in fear with a gun,* attempted to take from the person and possession of the said CLINTON FORD, money, which said money the said CLINTON FORD then and there lawfully held in his possession and which said money was then and there the property of CLINTON FORD, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana (emphasis supplied).

/s/ CLARENCE A. WHITE

Subscribed and sworn to before me this 14th day of NOVEMBER, A.D. 1966.

/s/ Noble R. Pearcy
Prosecuting Attorney
Nineteenth Judicial
Circuit"

The statute upon which this prosecution was based is found in Burns' Ind. Stat. 1968 Cum. Pocket Supp. Vol. 4, Pt. 2 and reads as follows:

"10-4709 (2317.1) Commission of or attempt to commit crime while armed with deadly weapon.—Any person who being over sixteen (16) years of age, commits or attempts to commit either the crime of rape, robbery, bank robbery, or theft *while armed with a pistol, revolver, rifle, shotgun, machine gun or any other firearm or any dangerous or deadly weapon,* or while any other person present and aiding or assisting in committing or attempting to commit either of said crimes is armed with any of said weapons, shall be guilty of a separate felony in addition to the crimes above named and upon conviction shall be imprisoned for a determinate period of not less than ten (10) years nor more than twenty (20) years, to be fixed by the court: Provided, That such court shall have the right to provide in the judgment that such term of imprisonment shall not run concurrently with any imprisonment that may be adjudged for either of the crimes first above enumerated but that such term of imprisonment shall be served beginning at the expiration of the imprisonment adjudged for either of said first named crimes. (Acts 1929, ch. 55, § 1, p. 139; 1965, ch. 298, § 1, p. 819)" (emphasis supplied).

The verdict of the jury, omitting heading, formal parts and signature of the foreman, in pertinent part reads as follows:

"We, the Jury, find the defendant, Raul Alamia Asocar, guilty of the commission of Attempted Robbery while Armed, as charged in the affidavit and that he be imprisoned for 10 years,

(here inserting such period as you may agree upon as the period during which the defendant should be imprisoned, such period not less than ten (10) years nor more than twenty (20) years.)

and we find that the defendant's age is 39 years.

(here inserting the defendant's age if you are able to determine his age from the evidence.)"

Thereafter, on March 30, 1967, judgment on said verdict was entered against appellant which reads as follows, to-wit:

"The Court having examined the Pre-Sentence Investigation Report heretofore filed by the Probation Department, now asks defendant if he has any legal cause or reason why judgment should not be pronounced and sentence imposed on the finding of guilty heretofore entered, and the defendant having none, the Court now sentences the defendant to the Indiana State Prison for Ten (10) years. Costs.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the defendant be and hereby is, sentenced to the Indiana State Prison for Ten (10) years and costs."

That on April 19, 1967, Amended Motion for New Trial was filed on behalf of appellant, such motion omitting heading and formal parts reads as follows:

"Comes now the Defendant, Raul A. Asocar, by the undersigned court-appointed counsel, and moves that the Court grant a new trial herein, upon the following grounds:

1. That the verdict of the Jury is not sustained by sufficient evidence.

2. That the verdict of the Jury is contrary to law.

/s/ Frank E. Spencer
Frank E. Spencer
Attorney for Defendant

## *MEMORANDUM*

"The undersigned pauper counsel for the Defendant, Raul A. Asocar, in support of the above and foregoing motion for new trial and the certain specified grounds thereof, now respectfully shows and represents to the Court as follows:

1st ground: That the verdict of the Jury is not sustained by sufficient evidence. There was no evidence introduced to prove and establish the following material facts alleged in the affidavit charging the Defendant herein, now to support a reasonable inference of said facts separately and severally, as follows:

1. That the Defendant was over the age of sixteen (16) years on July 23, 1966, as charged in the affidavit.

2. That the Defendant 'unlawfully, feloniously, forcibly by violence and by putting Clinton Ford in fear' attempted to take from the person and possession of the said Clinton Ford money as charged in the affidavit.

3. That the Defendant at the time alleged in said affidavit was 'armed with a pistol, revolver, rifle, shotgun, machine gun or any other firearm or any dangerous or deadly weapon.'

4. That the Defendant attempted to take from the person of the said Clinton Ford any article of value.

2nd ground: That the verdict of the Jury is contrary to law. Defendant respectfully submits that the verdict was contrary to law because it was not sustained by sufficient evidence as set forth hereinabove, and also because it was contrary to the principles of law applicable to the case, in the following particulars:

1. That the verdict, in its terms, purported to find the Defendant guilty of a crime which does not exist—the verdict purported to find the Defendant guilty of 'the commission of Attempted Robbery While Armed.'

2. That the evidence presented, viewed most favorably for the State of Indiana, established that at the time and place alleged in the affidavit, the Defendant held a tear gas gun, that such a 'gun' does not fire a projectile, and is not in fact a firearm at all; and although the use of a firearm or other dangerous or deadly weapon is not necessary to the commission of the criminal offense of robbery, it is a necessary element, in the criminal offense of attempting to commit the crime of robbery

while armed, with a 'pistol, revolver, rifle, shotgun, machine gun or any other firearm or any dangerous or deadly weapon.' (Acts of 1929, Chapter 55, Sec. 1, as found in Burns' Sec. 10-4709. A verdict of 'guilty' based upon evidence of the use of a tear gas gun, which is not a gun at all, is therefore contrary to law.)

/s/ Frank E. Spencer
Frank E. Spencer
Attorney for Defendant"

Appellant's Amended Motion for New Trial was overruled by the trial court on June 8, 1967, such ruling being in the words and figures as follows, to-wit:

"Defendant's Amended Motion for New Trial is now overruled."

Thereafter, on July 7, 1967, appellant filed his Praecipe for the record.

The appellant's Assignment of Errors consists of the single specification:

"1. The Court erred in overruling Appellant's Amended Motion for New Trial."

A summary of the evidence most favorable to the appellee, State of Indiana, is as follows:

Clinton Ford, a witness for the State, testified that he saw the appellant at approximately 2:00 a.m. on the morning of July 23, 1966, at a Site Service Station located at 15th Street and Northwestern Avenue in Marion County, Indiana. The witness' wife and oldest son were with him in his car, and the witness' sister-in-law and brother were there in his brother's car. The witness stated that his brother and the appellant were standing outside of his brother's car, and that his brother called the witness over to where they were standing. Ford then testified that the appellant put a gun in his side, said "This is a stick-up", and ordered the witness and his brother to precede him into the station.

Before entering the station, Ford's brother turned toward the appellant. The appellant said "Go ahead, go ahead, I don't want to shoot you." The witness then said that his brother started walking toward the appellant, and that the appellant began backing up. Sensing that the appellant had lost his nerve, Ford and his brother knocked the gun out of the appellant's hand, the appellant then ran across the street, where he was apprehended by the witness and his brother. Ford's son then called the police.

The witness further testified that he at first did not know the kind of gun being used by the appellant. He said that it looked like a small .22 automatic, and did not learn otherwise until after it had been knocked out of the appellant's hand. He also stated that he could not positively identify State's Exhibit 1, although he did say that it looked like the gun used by the appellant.

The second witness for the State was Lt. David Jeter of the Indianapolis Police Department. He testified that he assisted in the arrest of appellant, which took place at 2:43 a.m. on July 23, 1966, at about the 1400 block of Northwestern Avenue. He identified State's Exhibit 1 as the gun that was recovered at the scene. When he first saw it it was in the possession of a Mayer Weber. He said that he was sure that it was the same gun because a police officer initialed it in his presence.

On cross-examination Lt. Jeter testified that he could not recall whether there were any gas capsules in the gun when he took possession of it, and that, to the best of his knowledge, the gun was not loaded at the time of the alleged crime. He further testified that a tear gas gun of the type taken from the appellant has a sealed barrel through which a gas pellet, or anything else, cannot pass.

The third witness called by the State was Sgt. Clarence White of the Indianapolis Police Department. He testified

that he first checked the gun while it was in the possession of the police property room. He examined the gun and found it to be a tear gas gun which, when loaded and fired, emits fumes from a hole at the top of the barrel. He further stated that nothing passes through the barrel itself. Sgt. White, on direct examination, testified that he was told that tear gas could be dangerous if fired into one's face at close range, but on re-direct examination said that he did not know if the type of gun in question would have that effect since he had never fired one before. Finally, Sgt. White testified that the gun was not loaded at the time of the alleged offense.

At this point in the evidence the State of Indiana rested its case and the defendant moved for discharge on the ground that the State had failed to prove the age of the defendant and also failed to prove that the instrument used in the alleged commission of attempt to commit robbery while armed was a dangerous or deadly weapon within the provisions of the statute, Burns' Stat. 10-4709, and that the alleged tear gas gun was not even loaded. The State of Indiana then moved to re-open its case, the defendant objected, and the court granted the motion to re-open.

Clarence White, a witness re-called on behalf of the State of Indiana, having been previously sworn by the court, testified as follows, to-wit:

"Q. Sergeant White, as the detective who investigated this incident, can you tell me whether or not Raul Alamia Asocar is over the age of sixteen (16) years?

A. Yes sir. Our records show that I checked him to be thirty-nine (39).

MR. CONNOR: Thank you. No further questions.

MR. MAY: No questions.

THE COURT: All right. The witness is excused."

And that concluded the testimony on the part of the State.

The defense then called Officer White to the stand as a defense witness.

The witness, White, on cross examination by Mr. Connor, testified as follows:

"Q. The difference between this gun, a gas gun, and a normal pistol—this gun fires gas whereas a pistol fires some sort of a projectile, isn't that correct?

A. That's correct.

Q. Both use powder?

A. Yes.

Q. Both of them use the same kind of charge?

A. Yes.

Q. Projectiles. What is discharged is the difference?

A. That is correct."

After some further questioning both parties rested.

One of the first questions presented by this appeal goes to the question of the age of the appellant. In order to violate the statute under which this prosecution was instituted, §10-4709 Burns', *supra*, the person charged must be over sixteen (16) years of age. It therefore follows that in order to sustain the judgment of the trial court it was necessary for the State of Indiana to prove beyond a reasonable doubt that appellant, at the time of the commission of the alleged offense, was more than sixteen (16) years of age. A careful reading of the briefs and the transcript discloses that at the close of the State's evidence in chief, at which time the State rested and appellant filed his motion for a discharge for failure to prove appellant's age, no evidence as to appellant's age had been adduced by the State nor was there any evidence in the record as to his age. This fact is admitted by the parties.

The court, on motion and at the request of the State, permitted the State, over appellant's objections, to reopen its

case in order to offer evidence as to appellant's age. In view of its importance we set out in toto and verbatim the question and answer of the witness, to-wit:

"Q.   Sergeant White, as the detective who investigated this incident, can you tell me whether or not Raul Alamia Asocar is over the age of sixteen (16) years?

A.   Yes sir. Our records show that I checked him to be thirty-nine (39)."

No further questions were asked the witness who was thereupon excused by the court.

Appellant contends the evidence adduced does not meet the necessary requirements to prove appellant's age to be more than sixteen but is not even evidence of substantial probative value of the age of the defendant in years at the time the offense was alleged to have been committed.

Appellee commented in its brief pages six and seven as follows:

"Appellee submits that the phrase 'I checked him to be thirty-nine' may be a little vague in its description of the police officer's action, but it *clearly* states that Officer White had arrived at *some* conclusion concerning defendant's age."

Appellant contends appellee's statement is not only an inaccurate conclusion from what the officer stated in respect to "our records", but it is a *non sequitor,* does not even amount to a statement that upon any basis of any kind whatsoever the officer even determined that the defendant was anything or any age, is not substantial evidence of probative value as to the defendant's age and is not a conclusion or opinion of the witness based upon personal observation of the defendant.

The appellant has cited the case of *Lee v. State* (1954), 233 Ind. 176, 181, 118 N. E. 2d 115, which holds that the statement by a police witness of a conclusion of his, based

upon information which he obtained in the course of his investigation of the case, with no facts in evidence upon which any inference in that respect could be based, is not sufficient to establish the same as a matter of evidence.

In the *Lee* case, *supra*, the court said:

"Aside from the testimony of officer Mangus there is no evidence from which the jury could have found that appellant was in any way connected with the taking or use of the stolen car. Hence, if appellant's conviction is to be sustained it must be upon the testimony of officer Mangus.

The testimony of officer Mangus is a conclusion based upon information which he obtained in the course of his investigation of the case, after apppellant's arrest. No facts upon which any inference of appellant's guilt could be based, are to be found in this testimony. It is nothing more than a mere opinion of the witness as to the guilt of appellant.

The unsupported opinion of officer Mangus, that appellant had something to do with the crime charged, is not sufficient to establish the acts charged in the affidavit; nor can such testimony be considered to supply a lack of evidence of such acts and conduct as are necessary to constitute the crime charged. See *Caveny v. State* (1936), 210 Ind. 455, 459, 4 N. E. 2d 137; *Hiner v. State* (1925), 196 Ind. 594, 599, 149 N. E. 168; c. f. *Green v. State* (1945), 223 Ind. 614, 621, 63 N. E. 2d 292."

The writer of this dissent concludes that Sergeant White's answer to the question as to appellant's age evaded the issue, it is in two parts, the first part "Yes sir" answered the direct question; the second part "Our records show that I checked him to be thirty-nine (39)" was a voluntary statement after the question had been answered, but even so that witness did not testify that appellant was thirty-nine years of age at any time. Even the State in its brief pp. 6 and 7 by inference so admits.

I, therefore, agree with appellant that the State failed to sustain its burden of proof as to the age of the appellant in the case at bar.

At the risk of unduly extending this dissent, I am compelled to take issue with my colleagues on two other issues discussed in the majority opinion. The first of these is discussed in the majority opinion as follows: "The appellant claims there is no evidence showing that he was armed with a weapon as defined in the statute under which he was charged. The evidence was that he was armed with a tear gas pistol which was constructed in such a manner that no projectile was fired from the gun, but the firing of the gun caused an emmission of tear gas only. The statute reads as follows:" (Here the statute is copied but is omitted herefrom as it appears in the majority opinion.)

It is at this point that I wish to call attention, again, to the affidavit, *supra,* charging appellant with the alleged crime in the case at bar. The charging part thereof reads as follows: ". . . being then and there over the age of sixteen (16) years, did then and there unlawfully, feloniously, forcibly by violence and by putting CLINTON FORD, in fear with a GUN, attempted to take from the person and possession of the said CLINTON FORD, money . . . ."

The record in this case shows conclusively that the object used or attempted to be used by appellant in the commission of this alleged crime is what is called a tear gas pistol. The same is approximately the size and shape of a small .22 semi-automatic pistol but differs therefrom in that what would be the barrel in an ordinary pistol is in these devices not bored through the length of the slide but extends only a short distance forward from the chamber, and then at right angles comes out on top of the pistol, the end of what would normally be the barrel is solid so that nothing, not even gas or powder, let alone a projectile could escape from the front, the gas from the gas shell is emitted through the hole in the top of the device but no projectile could be emitted therefrom. Furthermore, the gas shells are of such small size and construction that no 22 calibre ball or shot cartridge will chamber in the device. Such a device does not fall within

the purview of the statute, § 10-4709 Burns', *supra,* and is not a firearm under any State or Federal statute that I have been able to find. In fact I am unable to find any State statute that defines a "firearm".

The Federal definition found in Title 15, Section 901 (3) reads as follows:

"(3) The term 'firearm' means any weapon, by whatever name known, which is designed to expel a *projectile* or *projectiles* by the action of an explosive and a firearm muffler or firearm silencer, or any part or parts of such weapon" (emphasis added).

The Congress, by Act of June 19, 1968, P.L. 90-351 added under Title 18, Sec. 921 (3) the following amendment:

"The term 'firearm' means any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a *projectile* by the action of an explosive; the frame or receiver of any such weapon; or any firearm muffler or firearm silencer; or any destructive device." (emphasis added).

"(4) The term 'destructive device' means any explosive, incendiary, or poison gas bomb, grenade, mine, rocket, missile or similar device and includes any type of weapon which will or is designed to or may readily be converted to expel a projectile by the action of any explosive and having any barrel with a bore of one half inch or more in diameter."

Referring again to the statute, Section 10-4709 Burns', *supra,* the gravaman of the offense thereunder consists of the commission or attempt to commit certain designated crimes ". . . while armed with a pistol, revolver, rifle, shotgun, machine gun or any other firearm . . ."

Obviously, in the case at bar, the device used or attempted to be used is not proscribed by the statute under which the prosecution was instituted, hence the State's case must fail.

The majority opinion also reads as follows:

"This court has recently held that use of the term 'firearm' as it appears in the above statute covers the entire

spectrum of possible weapons which use gun powder. There is, therefore, competent proof under the weight of authority in this state and throughout the United States that the use of the weapon described in this case was evidence from which the trier of fact could conclude that the appellant used a firearm. *Kidwell v. State* (1967), 249 Ind. 430, 11 Ind. Dec. 641, 644, 230 N. E. 2d 590."

In reply to the above all that need be said is that the above is erroneous dicta. In the *Kidwell* case, cited above, the question of ejusdem generis arose by virtue of the fact that there the alleged offensive weapon was a knife and, as such, was not specifically named in the statute, but was alleged to be a "dangerous or deadly weapon". Even a cursory reading of the cited case discloses the dicta and it provides no support for the State's case here. Certainly the trier of the facts can conclude the defendant is guilty, but if the conclusion is not based on sufficient evidence of probative value, the verdict and any judgment rendered thereon must be set aside. In the case at bar, not only is there no evidence of probative value that appellant was armed with a "pistol, revolver, rifle, shotgun, machine gun or any other firearm . . .," but there is also no evidence that he was even "armed" within the meaning of the statute. As was said in the case of *Thompson v. Louisville,* "Thus we find no evidence in the record to support these convictions. Just as 'conviction upon a charge not made would be sheer denial of due process,' so it is a violation of due process to convict and punish a man without evidence of his guilt." *Thompson v. Louisville* (1960), 362 U. S. 199, 4 L. Ed. 2d 654, 80 S. Ct. 624; *Cole v. Arkansas* (1948), 333 U. S. 196, 201, 92 L. Ed. 644, 647, 68 S. Ct. 514; *DeJonge v. Oregon* (1937), 299 U. S. 353, 362, 81 L. Ed. 278, 282, 57 S. Ct. 255.

The judgment of the trial court should be reversed and this cause remanded with instructions to grant appellant's Motion For a New Trial.

NOTE—Reported in 247 N.E. 2d 679.